FILED
Jul 12 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ soniad   DEPUTY

Carsten Rosenow
Reg. No. 62380-298
MCC San Diego
Metropolitan Correctional Center
808 Union Street
San Diego, CA 92101
Email: crosenow@rocketmail.com
Tel: 650-868-3011

UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Carsten Rosenow,<br><br>Plaintiff,<br><br>vs.<br><br>Facebook, Inc.; Yahoo, Inc.;<br><br>Defendants. | Civil Action No. '19 CV 1297 WQH MDD<br><br>**Complaint for Damages for:**<br><br>1. Violations of the Stored Communications Act (18 U.S.C. 2701 et seq.)<br>2. Violations of the Electronic Communications Privacy Act (18 U.S.C. 2510 et seq.)<br>3. Violations of the California Invasion of Privacy Act (Cal. Penal Code § 631)<br>4. Negligence.<br><br>**Demand for Jury Trial.** |

## INTRODUCTION

1.  This lawsuit stems from the illegal and warrantless searches of Plaintiff Carsten Rosenow's Yahoo and Facebook accounts and the disclosure of private communications from those accounts to unauthorized third parties. Defendants Yahoo and Facebook unlawfully disclosed the contents of Plaintiff's private accounts, and in doing so violated both the Electronic Communications Privacy

1

COMPLAINT

## ATTACHMENT 1 TO CIVIL COVER SHEET

Carsten Rosenow
Reg. No. 62380-298
MCC San Diego
Metropolitan Correctional Center
808 Union Street
San Diego, CA 92101
Email: crosenow@rocketmail.com
Tel: 650-868-3011

Act and the Stored Communications Act. Plaintiff requests a jury trial to pursue justice on these claims.

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. § 1331, this Court has original subject matter jurisdiction over the claims of Plaintiff that arise under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 *et seq.* and the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 *et seq.*

3. Venue is proper in the United States District Court for the Southern District of California under 28 U.S.C. §§ 1391(b)(1), (b)(2), (d). As alleged in this Complaint, a substantial portion of the events or omissions giving rise to the wrongdoing occurred in the Southern District of California. Further, Defendants are subject to personal jurisdiction in the Southern District of California, having millions of users for their services in the region and conducting substantial marketing and sale of their products within the District.

## PARTIES

4. Plaintiff Carsten Rosenow was, at all times relevant to this lawsuit, a citizen of the State of California and resident of the County of San Diego.

5. Defendant Facebook, Inc. ("Facebook") is an American corporation, headquartered in Menlo Park, California, and incorporated under the laws of the State of Delaware. Facebook owns and operates an online social networking website that allows its users to communicate with each other through the sharing of text, photograph, and video.

6. Defendant Yahoo!, Inc. ("Yahoo") is an American corporation, headquartered in Sunnyvale, California, and incorporated under the laws of the State of Delaware. Yahoo's major business activities are primarily supplying and operating Internet services, web-based personal e-mail accounts, news portals, and

a search engine, all designed to facilitate electronic communications and the sharing of information. By the nature of its activities, Yahoo has access to, and maintains, identifying information about individuals using its electronic services.

## FACTUAL ALLEGATIONS

7. In September of 2014, an internet company, Xoom.com, advised Yahoo that certain Yahoo accounts were potentially involved in illegal activity involving minors.

8. In response, Yahoo warrantlessly searched electronic communications associated with these accounts.

9. For years, Yahoo performed these warrantless searches of users' private communications, providing government agencies with reports containing the content of the private communications, the contact lists of the users communicating, phone numbers and email addresses, IP information, and metadata.

10. Despite advising users and advertising that electronic communications—including chats, emails, and messages—were private, Yahoo knowingly used its own technology to read these communications and provide government agencies with the contents of the communications and the record information for the target of the searches.

11. As a result of the Xoom.com information and the ensuing warrantless searches in September 2014, Yahoo discovered various account holders who allegedly either bought or sold child pornography.

12. Yahoo knowingly identified these suspects in a report, which was sent to the National Center for Missing and Exploited Children ("NCMEC") and the Federal Bureau of Investigation ("FBI"). That report occurred in October 2014.

13. The report *did not* mention Plaintiff at all.

14. Following Yahoo's disclosures, the FBI office in San Diego began serving subpoenas for the financial information of those suspected account holders.

15. While the FBI office in San Diego executed these subpoenas, Yahoo warrantlessly searched Plaintiff's Yahoo account, including emails, chats, and other electronic communications.

16. Yahoo knowingly used an algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit and before placing them in electronic storage.

17. Throughout this process, the FBI office in San Diego communicated and worked closely with Yahoo employee Sean Zadig, a purported member of Yahoo's "E-Crimes Investigations Team."

18. Zadig is a former law-enforcement officer and now employs a host of other law-enforcement alumni as part of Yahoo's E-Crimes Investigation Team.

19. Zadig and Yahoo reviewed the contents of Plaintiff's electronic communications—including emails, messages, and chats—as well as Plaintiff's record information.

20. Yahoo then submitted a "supplemental report" to NCMEC and the FBI in San Diego in which it knowingly and purposefully provided the contents of Plaintiff's electronic communications and record information, and implicated Plaintiff in traveling internationally for the purposes of soliciting minors.

21. Yahoo knowingly and purposefully submitted these "supplements" to NCMEC only after providing notice to the FBI in San Diego, and it emailed law enforcement separately to prompt them to retrieve the information in advance of an in-person meeting.

22. Yahoo never notified Plaintiff about any of these warrantless searches.

23. Yahoo never notified Plaintiff that it was scanning, reading, and reviewing his private emails, chats, and other electronic communications.

24. Yahoo never notified Plaintiff about any violations to Yahoo's terms or conditions of services.

25. Yahoo never closed Plaintiff's Yahoo accounts.

26. Plaintiff never consented to any search of his accounts or to the disclosure of his private communications or customer records.

27. Plaintiff never consented to Yahoo collecting and storing the content of his private electronic communications for future use.

28. In July of 2015, Yahoo gave the government notice of yet more warrantless searching, and that more fruit was forthcoming.

29. That 2015 search by Yahoo knowingly and purposefully gathered Plaintiff's entire chat history, and yielded more evidence that allegedly incriminated Plaintiff.

30. In October 2015, the FBI in San Diego executed search warrants on other Yahoo customers and accounts, and Yahoo knowingly and purposefully returned to that office communications never authorized by the search warrant.

31. The search-warrant returns contained additional emails and chats involving Plaintiff.

32. Yahoo never notified Plaintiff about those searches or about the fact that Plaintiff's private customer records, emails, messages, chats, and other communications were being disclosed to third parties.

33. Plaintiff, again, did not consent to any of these searches or to the disclosure of his private communications or customer records.

34. On or about December 2015, Yahoo knowingly and purposefully submitted more "reports" to NCMEC and the FBI with Plaintiff's chat messages attached.

35. In providing these reports to NCMEC and the FBI, Yahoo exceeded its authority under 18 U.S.C. § 2258A, which only authorizes reporting for "facts or circumstances from which there is an apparent violation of [18 U.S.C. ] § 2251, 2251A, 2252, 2252A, 2252B, that involves child pornography; or section 1466A."

36. Because Plaintiff's Yahoo accounts never contained any evidence of the solicitation, receipt, or exchange of child pornography, there were no "apparent violations" authorized the reporting of the content of his accounts to NCMEC or the FBI.

37. Yahoo never notified Plaintiff about any of these warrantless searches.

38. Yahoo never notified Plaintiff that it was reading and reviewing his private emails, chats, and other electronic communications.

39. Yahoo never notified Plaintiff about any violations to Yahoo's terms or conditions of services.

40. Yahoo never closed Plaintiff's Yahoo accounts.

41. Plaintiff never consented to any search of his accounts or to the disclosure of his private communications or customer records.

42. Relying on the information gleaned from these illegal searches, the FBI attempted to obtain a search warrant for Plaintiff's Yahoo accounts.

43. The U.S. Attorney's Office refused to authorize the warrant.

44. In early 2017, FBI San Diego sent a preservation request to Facebook for Plaintiff's Facebook. The FBI obtained Plaintiff's Facebook information through unknown means.

45. In March 2017, the FBI in San Diego served an administrative subpoena on Facebook requesting the details of Plaintiff's Facebook accounts.

46. Facebook promises its customers and users that their data will be kept private.

47. Facebook promises its customers and users that it will comply with the Electronic Communications Privacy Act.

48. Despite these promises, and the fact that the FBI in San Diego did not have a warrant for Plaintiff's accounts, Facebook knowingly and purposefully searched Plaintiff's accounts—including his private messages and communications—in April 2017.

49. Following this search, Facebook reported to NCMEC and the FBI San Diego that it had allegedly discovered evidence of child exploitation on Plaintiff's accounts.

50. Facebook knowingly and purposefully attached Plaintiff's private message communications in its reports to NCMEC and the FBI.

51. In providing these reports to NCMEC and the FBI, Facebook exceeded its authority under 18 U.S.C. § 2258A, which only authorizes reporting for "facts or circumstances from which there is an apparent violation of [18 U.S.C. ] § 2251, 2251A, 2252, 2252A, 2252B, that involves child pornography; or section 1466A."

52. Because Plaintiff's Facebook accounts never contained any evidence of the solicitation, receipt, or exchange of child pornography, there were no "apparent violations" authorized the reporting of the content of his accounts to NCMEC or the FBI.

53. Facebook never notified Plaintiff about any of these warrantless searches.

54. Facebook never notified Plaintiff that it was reading and reviewing his private emails, messages, chats, and other electronic communications.

55. Facebook never notified Plaintiff about any violations to Facebook's terms or conditions of services.

56. Plaintiff never consented to any search of his accounts or to the disclosure of his private communications.

57. Plaintiff's Facebook account was private and had no substantial visibility to the public.

58. The information provided by Facebook's knowing, purposeful, and warrantless searches led the government to obtain a search warrant against Plaintiff's property and personal effects.

59. Government agents ultimately arrested Plaintiff at the San Diego airport in June 2017.

60. Agents searched Plaintiffs' property, including his cell phone, and later executed a search at his home. The searches led to Plaintiffs' indictment for alleged violations of 18 U.S.C. §§ 2251(c), 2423(b), and 2252(a)(4)(B) in October 2017.

61. Plaintiff did not learn of Yahoo's and Facebook's warrantless searches of his accounts and the disclosure of the contents of those accounts until discovery was provided to him by the government in the months following the indictment.

62. Plaintiff is currently in custody awaiting trial.

## I.
## FIRST CAUSE OF ACTION
### (All defendants)
### Violation of Stored Communications Act (18 U.S.C. § 2702)

63. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

64. The SCA contains provisions that provide consumers with redress if a company mishandles their electronically stored information. The SCA was designed, in relevant part, "to protect individuals' privacy interests in personal and proprietary information." S. Rep. No. 99-541, at 3 (1986), reprinted in 1986 U.S.C.C.A.N. 3555 at 3557.

65. Section 2702(a)(1) of the SCA provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

66. The SCA defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Id.* at § 2510(15).

67. Defendants Yahoo and Facebook provide an "electronic communication service to the public" within the meaning of the SCA because they collect and store their customers' personal and private information.

68. Section 2702(a)(2)(A) of the SCA provides that "a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service." 18 U.S.C. § 2702(a)(2)(A).

69. The SCA defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communication system." 18 U.S.C. § 2711(2).

70. An "electronic communications systems" is defined by the SCA as "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. § 2510(4).

71. Defendants provide remote computing services to the public by virtue of their computer systems which store their customers' personal and private information.

72. As alleged in this Complaint, Defendants unlawfully and knowingly divulged Plaintiff's electronic communication contents and user information, in violation of 18 U.S.C. § 2702.

73. Defendants were not authorized to divulge the information by 18 U.S.C. § 2258A for the reasons described in this Complaint.

74. Defendants knew or should have known that divulging private electronic communications could result in harm to Plaintiff.

75. Defendants' conduct described herein legally, proximately, foreseeably and actually harmed Plaintiff and/or was a substantial factor in causing harm to Plaintiff, including but not limited to: deprivation of his civil and statutory rights,

humiliation, mental and emotional and distress; and other damages in an amount to be proven at trial.

## II.

## SECOND CAUSE OF ACTION

**Violation of the Electronic Communications Privacy Act (18 U.S.C. § 2520)**

**(All Defendants)**

76. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

77. Defendants Yahoo and Facebook violated Plaintiff's rights under the ECPA by knowingly and intentionally disclosing electronic communications between Plaintiff and other persons to unauthorized third parties.

78. Defendants also intentionally acquired and/or intercepted the contents of communications sent and/or received by Plaintiff through the use of an electronic device and disclosed them to unauthorized parties.

79. Defendants further intentionally acquired the communications that had been sent from, or directed to, Plaintiff through his use of computers and other electronic devices which were part of, and utilized in, Defendants' electronic communications system, in violation of 18 U.S.C. § 2511.

80. Defendants were not authorized to divulge the information by 18 U.S.C. § 2258A for the reasons described in this Complaint.

81. Defendants knew or should have known that divulging private electronic communications could result in harm to Plaintiff.

82. Defendants' conduct described herein legally, proximately, foreseeably and actually harmed Plaintiff and/or was a substantial factor in causing harm to Plaintiff, including but not limited to: deprivation of his civil and statutory rights, humiliation, mental and emotional and distress; and other damages in an amount to be proven at trial.

## III.

## THIRD CAUSE OF ACTION

### Violation of Invasion of Privacy Act (Cal. Penal Code § 631 et seq.)

### (All Defendants)

83. Plaintiff realleges and incorporates herein by reference each and every allegation in the preceding paragraphs.

84. California Penal Code § 630 provides that "The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

85. Plaintiff sent and received private emails, messages, and other electronic communications via Defendants' services.

86. Defendants are not and were never at any time a party to Plaintiff's private emails, messages, and other electronic communications.

87. Using the technological tools at their disposal, Defendants are able to read and learn the content of Plaintiff's private emails, messages, and other electronic communications.

88. Defendants acted purposefully and willfully in reading Plaintiff's private emails, messages, and other electronic communications, and did not have Plaintiff's consent to take such action.

89. At the time Defendants read, or attempted to read, the content of Plaintiff's messages and communications, the messages and communications were in transit.

90. At the time Defendants read, or attempted to read, the content of Plaintiff's messages and communications, the messages and communications were passing over a wire, line, or cable.

91. Private messages – coded, written messages sent electronically to remote locations – are telegraphs within the meaning of the CIPA. As such, the wires, lines, cables and/or instruments which carry and facilitate the transmission of Plaintiffs' messages are telegraph wires, lines, cables and/or instruments within the meaning of CIPA and PC § 631(a).

92. Plaintiff did not consent, expressly or impliedly, to Defendants' eavesdropping upon and recording of his private messages and communications. Defendants did not and do not disclose material information to its users relating to their attempts at, among other things, intercepting, scanning and reading the contents of users' private messages and communications.

93. Defendants' conduct described herein was unlawful and legally, proximately, foreseeably and actually harmed Plaintiff and/or was a substantial factor in causing harm to Plaintiff, including but not limited to: deprivation of his civil and statutory rights, humiliation, mental and emotional and distress; and other damages in an amount to be proven at trial.

## IV.
## FOURTH CAUSE OF ACTION
### Negligence
### (All Defendants)

94. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

12
COMPLAINT

95. Defendants had a statutory duty to safeguard Plaintiff's private electronic communications under both the SCA and EPCA. Defendants also had a statutory duty to provide notice to Plaintiff of the disclosure of his private communications.

96. Defendants breached these duties through the acts and omissions set forth in this Complaint.

97. Defendants knew or should have known that breaching these statutory duties could result in harm to Plaintiff.

98. Defendants' conduct described herein legally, proximately, foreseeably and actually harmed Plaintiff and/or was a substantial factor in causing harm to Plaintiff, including but not limited to: deprivation of his civil and statutory rights, humiliation, mental and emotional and distress; and other damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants as follows:

1. General and compensatory damages in an amount according to proof;
2. Punitive and exemplary damages;
3. Civil penalties as provided by law;
4. Attorneys' fees;
6. Costs of suit;
7. And for such other and further relief as the Court may deem proper.

Dated: July 12, 2019

Respectfully Submitted,

**CARSTEN ROSENOW**
Plaintiff

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS113490
Cashier ID: akukura
Transaction Date: 07/12/2019
Payer Name: Carsten rosenow
----------------------------------------
CIVIL FILING FEE
 For: Carsten rosenow
 Case/Party: D-CAS-3-19-CV-001297-001
 Amount:         $400.00
----------------------------------------
CHECK
 Check/Money Order Num: 10014
 Amt Tendered:   $400.00
----------------------------------------
Total Due:       $400.00
Total Tendered:  $400.00
Change Amt:      $0.00

There will be a fee of $53.00
charged for any returned check.
```